Chicago Title Insurance Company, Plaintiff, v. City of Milwaukee, Defendant and Appellant: Milwaukee Civic Developments, Inc., Defendant and Respondent: Hunzinger Construction Company and others, Defendants.

*No. 192. Argued March 30, 1970.—Decided April 28, 1970.*
(Also reported in 176 N. W. 2d 371.)

652

654

For the appellant there were briefs by *John J. Fleming,* city attorney, and *Richard F. Maruszewski* and *Maurice L. Markey,* assistant city attorneys, and oral argument by *Mr. Maruszewski* and *Mr. Markey.*

For the respondent there was a brief by *Whyte, Hirschboeck, Minahan, Harding & Harland,* and *Reginald W. Nelson,* all of Milwaukee, and oral argument by *Mr. Nelson.*

HANLEY, J. The sole issue presented on this appeal is whether the trial court erred in determining that MCDI had complied with the escrow agreement and was therefore entitled to the return of its deed. Only the right of *possession* of the deed is before the court. Other actions to determine title to the land and the city's right to damages for alleged breach of contract are apparently still pending at the trial level.

It is the position of the city on this appeal that the definition of *construction,* as set forth in the "Supplemental Agreement" and incorporated into the escrow agreement, must be interpreted to mean that the deed was not to be returned to MCDI unless and until MCDI had *completed* all of the contemplated construction. This position, however, appears to be an afterthought, for throughout the pleadings and the trial the question before the trial court was whether *construction,* as that term was defined in the agreement, had been *commenced.* It appears that only after the trial court found against the city did the city shift its argument and maintain that *completion* was required.

In support of this belated position the city relies upon language in the "Supplemental Agreement" which suggests the intention of the parties was to provide a definite terminal date.[2] However, the same provision in the "Supplemental Agreement" upon which the city relies also reveals that the intent of the parties was to provide for the prompt *commencement* of construction.

---

[2] *"Whereas,* the parties hereto now desire to change the provisions of this paragraph [dealing with the 210-day period in which to commence construction] and to provide a *definite terminal date;* now, therefore, in consideration of the mutual benefits accruing. . . ." (Emphasis supplied.)

The city also contends that were this court to interpret the escrow agreement so as to require only *commencement* of construction, the agreement would not be a sound business instrument because the city would in effect be selling an extremely valuable piece of land for only $11,111.11, plus the bare promise to merely *commence* (not finish) construction. This argument erroneously assumes that title to the property is here being decided and ignores the fact that the city had deeded the land to MCDI before it ever entered into the escrow arrangement. MCDI already had the deed. In its request for bids and in its initial agreement [3] with MCDI, the city had agreed to deed the land prior to completion of construction. In other words, the city had already done exactly what it now claims the escrow agreement should not be interpreted as doing.

MCDI is correct in its position (1) that the incidents leading to the "Supplemental Agreement" as well as its very terms indicate its purpose was to provide for prompt *commencement* of construction, and (2) that the escrow agreement was merely to provide the mechanics for enforcing such agreement.

Such analysis is consistent with the position taken by the city immediately after trial when it objected to:

". . . the conclusions of law in that they do not determine that the supplemental agreement was a binding contract with respect to the subject matter of the instrument and that the escrow instrument was merely a procedure set up by the parties in furtherance and by way of implementation of the supplemental agreement of December 30, 1965, which provided through an escrow a conveyancing device solely designed to carry out the terms of the supplemental agreement."

Since this case merely determines the right to possession of the deed and does not determine title to the

[3] "The bidder agrees to pay the balance of the purchase price . . . and the city of Milwaukee upon such payment agrees to convey the described lands by warranty deed . . . ."

property or foreclose the city from seeking damages for any breach of its initial contract, we think the judgment of the trial court must be affirmed. Such judgment could be overturned only by this court's determination that the efforts extended by MCDI were insufficient to constitute *commencement of construction* as defined by the "Supplemental Agreement." The city, however, has not chosen to attack the trial court's finding that construction had been satisfactorily commenced according to the escrow agreement, nor does the record support such an attack.

On the contrary, the record indicates significant construction by MCDI's subcontractors, such as Marchese Brothers, Inc., who brought a mechanical shovel and a number of dump trucks to the property and commenced operating such equipment in excavating land from the property. Marchese completed the excavation for the footings on the Monday of the week of July 2, 1966, having excavated 9,024 cubic yards of earth.

Another subcontractor, the Hunzinger Construction Company, constructed four 16 by 16 foot square footings within this excavation, the easterly ones at elevations of 28 feet. In addition, forms were placed in the approximate center of this excavation for an elongated rectangular footing 276 by 14 feet in which steel reinforcing was placed. Elevations for this elongated footing ranged from 24.30 to 22.60 feet.

We conclude there is no merit to the city's contention that MCDI, under the terms of the "Supplemental Agreement," was required to continue construction until completion before being entitled to re-delivery of the deed under the escrow agreement.

The record supports the trial court's findings of fact and conclusions of law.

*By the Court.*—Judgment affirmed.